1
2
3
4
5
6
7
8                 UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,              No. 1:19-cr-00015-DAD-BAM

12            Plaintiff,                   ORDER GRANTING IN PART AND
                                          DENYING IN PART DEFENDANT'S
13        v.                              MOTION TO SUPPRESS STATEMENTS
                                          AND MOTION TO SUPPRESS
14  ERIK RAZO-QUIROZ, CONRADO             EVIDENCE SEIZED AND SETTING
    VIRGEN-MENDOZA, MARIA LUISA           GOVERNMENT MOTION FOR A
15  MORENO, ANA LEYDI                     PRETRIAL AUTHENTICATION FOR
    CERVANTES SANCHEZ, and                FURTHER HEARING
16  ERASMO VILLEGAS-SUAREZ,
            Defendants.                   (Doc. Nos. 287, 288, 292)
17

18

19        This matter is before the court on various pretrial motions.  First, defendant Ana Leydi

20  Cervantes Sanchez ("Cervantes Sanchez") has filed a motion to suppress her statements made on

21  December 28, 2018 and December 29, 2018 based on an allegedly inadequate advisement of her

22  rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) by law enforcement.  (Doc. No. 292.)

23  Second, defendant Cervantes Sanchez has also moved to suppress evidence seized pursuant to

24  both state and federal search warrants.  (Doc. No. 288.)  Third, the United States has moved for a

25  pretrial authentication of certain recordings, phone extractions, Facebook material, transcripts and

26  other records.  (Doc. No. 287.)

27        A hearing on these motions was held on May 6, 2019.  Assistant U.S. Attorneys Karen

28  Escobar, Michael Tierney, and Laura Withers appeared on behalf of the government.  Attorney

                                          1

1  Barbara O'Neill appeared for defendant Erik Razo-Quiroz.  Assistant Federal Defenders Megan

2  Hopkins and Erin Snider appeared for defendant Conrado Virgen Mendoza.  Attorney John

3  Meyer appeared for defendant Cervantes Sanchez.  Attorney Serita Rios appeared for defendant

4  Erasmo Villegas-Suarez and for defendant Maria Luisa Moreno on behalf of attorney Willard

5  Bakeman.

6        The nature of this criminal prosecution has been summarized in the court's prior order and

7  need not be repeated here.  (*See* Doc. No. 264 at 2–4.)  Below, the court addresses each of the

8  pending motions.

9                          **MOTION TO SUPPRESS STATEMENTS**

10        As noted, defendant Cervantes Sanchez moves to suppress her statements given on

11  December 28, 2018 and December 29, 2018, on the grounds that law enforcement officers

12  inadequately advised her of her *Miranda* rights.  (Doc. No. 292.)  On April 26, 2019, the

13  government filed an opposition to that motion, arguing that the *Miranda* advisement given by

14  Turlock Police Detective Frank Navarro ("Det. Navarro") on December 28, 2018 was sufficient.

15  (Doc. No. 303 at 5–8.)  The government also argues that even if the court were to find that Det.

16  Navarro's *Miranda* advisement was defective, defendant Cervantes Sanchez's statements to

17  Homeland Security Investigations Agent David Olaya made on December 29, 2018 are

18  nonetheless admissible.  (*Id.* at 8–13.)  On May 3, 2019, defendant Cervantes Sanchez filed a

19  reply in support of her motion to suppress the statements.  (Doc. No. 310.)

20  **A.      Factual Background**

21        The facts relevant to this motion are as follows.[1]  On December 28, 2018, defendant

22  Cervantes Sanchez was arrested at her sister's residence and taken to the Turlock Police

23  ─────────────────────

24  [1] These facts are derived from the parties' briefs (Doc. Nos. 292, 303, 310), translated transcripts
   of the interviews at issue (Doc. Nos. 292, 305), and a video recording of the December 28, 2018

25  interview (Doc. No. 311).  Both defendant Cervantes Sanchez and the government submitted
   different transcripts of the December 28, 2018 and December 29, 2018 interviews translated into

26  English.  (*See* Doc. Nos. 297, 305.)  The government has submitted a certificate of translation for
   the transcription of the interviews and presented its transcript for pretrial authentication at the

27  hearing on May 7, 2019.  (*See* Doc. No. 303 at 2; Doc. No. 305 at 21–25.)  Defendant Cervantes
   Sanchez also submitted defense versions of the transcripts but has not moved for authentication.

28  (Doc. No. 297.)

                                         2

1    Department, where she was questioned by Det. Navarro, a native Spanish speaker. (*See* Doc. No.

2    303 at 2.) At the outset of the interrogation, Det. Navarro advised Cervantes Sanchez that he

3    needed to read her *Miranda* rights to her and would later ask her if she understood them. (*Id.*)

4    Det. Navarro then recited the *Miranda* warnings from memory and asked Cervantes Sanchez if

5    she understood. (*Id.* at 2–3.) Defendant Cervantes Sanchez immediately indicated that she did

6    not understand what he had said. (*Id.* at 3.) Det. Navarro then recited the *Miranda* warnings

7    again from memory. (*Id.*) Cervantes Sanchez replied that she did not completely understand the

8    warning. (*Id.*)[2] Det. Navarro then repeated the *Miranda* warnings a third time, this time

9    providing some additional explanation as to each of the individual advisements. (*Id.*) Det.

10   Navarro then asked Cervantes Sanchez about her familiarity with the *Miranda* warnings. (*Id.*)

11   Cervantes Sanchez replied that she had only been in this country for four years and when asked

12   by Det. Navarro, said that she had not seen any movies in which the *Miranda* rights were read.

13   (*See* Doc. No. 297 at 2.) The video recording of the interview reflects, in the court's view, that

14   defendant Cervantes Sanchez did not make nonverbal gestures (i.e. nodding, etc.) that could

15   reasonably be interpreted as indicating that she understood the *Miranda* warnings given to her.

16       Seemingly to acknowledge that Cervantes Sanchez still did not have a sufficient

17   understanding of the *Miranda* warnings, Det. Navarro then repeated each individual advisement

18   within the *Miranda* warning one by one. (*See id.*) After doing so, Det. Navarro received

19   confirmation that defendant Cervantes Sanchez understood her right to remain silent, understood

20   her right to have an attorney to be present while she was being questioned, and understood that an

21   attorney would be provided to her free of charge if she could not afford one. (*See* Doc. No. 292 at

22   3–4.) However, Det. Navarro failed to explain and confirm that Cervantes Sanchez understood

23

24   _____
     [2]  The parties disagree about what defendant Cervantes Sanchez said at this point to communicate
25   her level of understanding. The government contends that she replied, "I understand a little bit of
     what you're saying." (Doc. No. 303 at 3.) Counsel for defendant Cervantes Sanchez contends
26   that when asked for the second time if she understood her rights as read to her Cervantes Sanchez
     actually said: "I don't . . . it's just that I don't understand too much what you are telling me."
27   (Doc. No. 297 at 1; *see also* Doc. No. 292 at 3.) The court interprets the defense contention to be
     that her response clearly indicated that, at the very least, she did not completely understand the
28   *Miranda* warnings as given to her.

                                                    3

that any statements she made to him could be used against her.  (*Id.* at 4.)  Nonetheless, and despite the lack of confirmation that Cervantes Sanchez understood that what she said could be used against her, the interview proceeded.  Defendant Cervantes Sanchez never made any statement during the course of that interview confirming that she knew that the statements she made to Det. Navarro could be used as evidence against her.  (*Id.*)

The following day, on December 29, 2018, Homeland Security Investigations ("HIS") Agent David Olaya ("Agent Olaya") conducted a custodial interview of defendant Cervantes Sanchez at the Stanislaus County Jail.  (*See* Doc. Nos. 299-7 at 1-17; 303 at 4.)  This interview was also recorded, and the government has submitted a transcript of the interview under seal.[3] (*See* Doc. No. 305 at 31–53.)  Prior to commencing the interview, Agent Olaya fully advised defendant Cervantes Sanchez of all the *Miranda* warnings and asked her if she understood.  (Doc. Nos. 305 at 33; 303 at 4.)  Defendant Cervantes Sanchez responded "yes" and did not ask any follow-up questions.  (*Id.*)  Agent Olaya then proceeded with his interview of Cervantes Sanchez.

**B.**     **Legal Standards**

The Fifth Amendment to the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself[.]"  U.S. Const. Amend. V. The Supreme Court has "recognized that custodial interrogations, by their very nature, generate 'compelling pressures which work to undermine the individuals will to resist and to compel him to speak where he would not otherwise do so freely.'"  *Moran v. Burbine*, 475 U.S. 412, 420 (1986) (quoting *Miranda*, 384 U.S. at 467).  "To combat this inherent compulsion, and thereby protect the Fifth Amendment privilege against self-incrimination, *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused."  *Moran*, 475 U.S. at 420; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *United States v. IMM*, 747

_____

[3]  The widespread sealing of exhibits in this criminal case pursuant to a protective order has significantly hampered the court in addressing these motions.  The court is aware that on May 29, 2019, the magistrate judge granted the parties' stipulation and issued an order modifying the protective order in this case.  (*See* Doc. No. 319.)  However, the stipulation and order are not retroactive, and as a result, numerous sealed documents still remain on the docket.  Therefore, the parties should be prepared to address at the next hearing whether there are any grounds remaining at this time justifying the sealed status of documents originally filed under seal in this action.

4

F.3d 754, 764 (9th Cir. 2014).  Specifically, the Supreme Court has held the Constitution requires

> that a person questioned by law enforcement officers after being "taken into custody or otherwise deprived of his freedom of action in any significant way" must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

*Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda*, 384 U.S. at 444); *see also*

*IMM*, 747 F.3d at 764.  "An officer's obligation to administer *Miranda* warnings attaches . . . only

where there has been such a restriction on a person's freedom as to render him in custody."

*Stansbury*, 511 U.S. at 322 (internal quotation marks omitted) (quoting *Oregon v. Mathiason*, 429

U.S. 492, 495 (1977)).  The Supreme Court has also explained as follows:

> The prophylactic Miranda warnings are not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected. Reviewing courts therefore need not examine Miranda warnings as if construing a will or defining the terms of an easement.  The inquiry is simply whether the warnings reasonably conve[y] to [a suspect] his rights as required by Miranda.

*Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (internal citations and quotations omitted).

"For inculpatory statements made by a defendant during custodial interrogation to be admissible

in evidence, the defendant's 'waiver of *Miranda* rights must be voluntary, knowing, and

intelligent.'"  *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998) (quoting *United States*

*v. Binder*, 769 F.2d 595, 599 (9th Cir. 1985)); *see also United States v. Shi*, 525 F.3d 709, 727

(9th Cir. 2008).  "A valid waiver of *Miranda* rights depends upon the 'totality of the

circumstances including the background, experience, and conduct of defendant.'"  *Shi*, 525 F.3d

at 727 (quoting *Garibay*, 143 F.3d at 536).  "To satisfy this burden, the prosecution must

introduce sufficient evidence to establish that under the 'totality of the circumstances,' the

defendant was aware of 'the nature of the right being abandoned and the consequences of the

decision to abandon it.'"  *Garibay*, 143 F.3d at 536–37 (quoting *Moran v. Burbine*, 475 U.S. 412,

421 (1986)); *see also United States v. Younger*, 398 F.3d 1179, 1185 (9th Cir. 2005).  Moreover,

there is a presumption against waiver of *Miranda* rights and a heavy burden of showing a valid

waiver by a preponderance of the evidence is on the prosecution.  *Colorado v. Connelly*, 479 U.S.

157, 168 (1986); *United States v. Bernard S.*, 795 F.2d 749, 752 (9th Cir. 1986); *Shi*, 525 F.3d at 727–28; *see also Garibay*, 143 F.3d at 537 ("The government's burden to make such a showing 'is great,' and the court will 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'") (quoting *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984). Courts are to consider the following factors in determining whether a defendant "knowingly and intelligently waived [her] constitutional rights":

> (1) whether the defendant signed a written waiver; (2) whether the defendant was advised of [her] rights in [her] native tongue; (3) whether the defendant appeared to understand [her] rights; (4) whether a defendant had the assistance of a translator; (5) whether the defendant's rights were individually and repeatedly explained to [her]; and (6) whether the defendant had prior experience with the criminal justice system.

*Garibay*, 143 F.3d at 538 (internal citations omitted); *see also United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007).

## C.    Analysis

### 1.    *December 28, 2018 interrogation*

Defendant Cervantes Sanchez argues that her statements made to Det. Navarro on December 28, 2018 should be suppressed, because the record establishes that she did not understand that those statements could be used as evidence against her. (Doc. No. 292 at 5–8.) Cervantes Sanchez argues that she clearly indicated that she did not understand the *Miranda* warning when Det. Navarro recited it to her the first three times, and that only by reviewing the individual advisements contained within that warning, one by one, did she gain an understanding of some aspects of the *Miranda* warning. (*Id.* at 6.) According to Cervantes Sanchez, Det. Navarro inaccurately informed her that he had explained all of her *Miranda* rights, even though he had failed to explain that her statements could be used as evidence against her in the final, broken–down version of the warning that he gave. (*Id.*) Therefore, Cervantes Sanchez maintains that she waived her rights without the requisite level of knowledge. (*Id.*)

The government counters that the *Miranda* advisement provided by Det. Navarro was sufficient. (Doc. No. 303 at 5–8.) According to the government, "[a]lthough Detective Navarro did not state during his 'one by one' explanation . . . that anything [defendant Cervantes Sanchez]

said could be used against her in a court of law, the context of the exchange indicates that Cervantes was aware of her rights . . . before she agreed to answer the detective's questions." (*Id.* at 6.) The government's contention in this regard, however, is not supported by the record before the court.

After the first three recitations of the *Miranda* advisements, Det. Navarro appeared to conclude that Cervantes Sanchez lacked a sufficient understanding of her rights and therefore continued to try to provide her a further explanation of those rights. In this regard, he attempted to simplify the *Miranda* warnings further by explaining each advisement within that warning individually. Admittedly, Det. Navarro did not provide much substantive insight for each individual advisement in the subsequent explanation he provided—but by slowing down his recitation and focusing on individual sentences, defendant Cervantes Sanchez verbally indicated that she had gained an understanding of the portions of the *Miranda* warning covered in this fashion by the detective. After reviewing the video recording of the warnings given and the subsequent interrogation, the court is not persuaded that the interaction reflects that defendant Cervantes Sanchez understood her rights *before* Det. Navarro began explaining the rights encompassed within the *Miranda* warning individually.

The government argues that a waiver of *Miranda* rights can be valid, despite a failure to explain to a defendant that their statements could be used against them. (Doc. No. 303 at 6–8.) In support of this contention the government relies on the decision in *Sanchez v. LaMarque*, No. 2:01-CV-1694 LKK KJN, 2011 WL 1103339, at *24 (E.D. Cal. Mar. 22, 2011), *aff'd sub nom. Sanchez v. Diaz*, 572 F. App'x 551 (9th Cir. 2014), in which a petitioner seeking relief pursuant to 28 U.S.C. § 2254 alleged a *Miranda* violation based on his dialogue with a detective. Initially, the detective in *Sanchez* recited the *Miranda* warning, and the petitioner assented when asked if he understood his rights. *Id.* at 22. When asked if he wished to waive his rights and talk with the detective, however, the petitioner equivocated. *Id*. The detective then attempted to explain the rights one by one, but the petitioner interrupted him and indicated that he was willing to talk to the detective without an attorney present. *Id*. Though the detective did not again explain to the petitioner that anything he said could be used against him, the court found that, in the context of

the entire dialogue between the two  the petitioner had made a knowing and intelligent waiver of his *Miranda* rights.  *Id.*

Defendant Cervantes Sanchez argues that the decision in *Sanchez* is distinguishable from this case for two principal reasons.  (Doc. No. 310 at 4.)  First, *Sanchez* was decided under the highly deferential standard of review applicable to habeas actions in which the state court's decision is only to be overturned if it constituted an unreasonable application of constitutional law as determined by the Supreme Court.  (*Id.*)  In contrast, here, it is the government that has the burden of establishing by a preponderance of the evidence that the *Miranda* warning provided to defendant Cervantes Sanchez resulted in her knowing and intelligent waiver of her right to remain silent.  *See Connelly*, 479 U.S. at 168; *Bernard S.*, 795 F.2d at 752; *Shi*, 525 F.3d at 727–28; *Garibay*, 143 F.3d at 537 ("The government's burden to make such a showing 'is great,' and the court will 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'") (quoting *Heldt*, 745 F.2d at 1277).  Moreover, in *Sanchez*, the petitioner had a long history of encounters with law enforcement and stated from the onset that he understood his rights—both considerations that weigh towards a knowing and intelligent waiver of rights and neither of which are present in this case.  (*Id.*)

Here, Det. Navarro conceded that he recited the *Miranda* advisements from memory and did not rely on a written *Miranda* card, nor did he obtain a signed *Miranda* waiver from the defendant.  This case, contrary to the government's assertion, is therefore not analogous to *United States v. Bautista-Avila*, 6 F.3d 1360, 1365 (9th Cir. 1993) and *United States v. Cazares*, 121 F.3d 1241, 1243 (9th Cir. 1997) in which the Ninth Circuit affirmed district court decisions finding *Miranda* waivers to be valid.  (*See* Doc. No. 303 at 12.)  Unlike in *Bautista-Avila*, defendant Cervantes Sanchez was not provided with an opportunity to review or sign a printed *Miranda* waiver.  *Bautista-Avila*, 6. F.3d at 1365; *see also Bernard S.*, 795 F.2d at 753 n.4 ("Although not dispositive, a written waiver of one's Miranda rights is 'strong' evidence that the waiver is

/////

/////

/////

valid.") (citing cases).[4]  Unlike in *Cazares*, defendant Cervantes Sanchez was not given the

opportunity to "read the *Miranda* warning aloud in Spanish from a card . . .."  *Cazares*, 121 F.3d

at 1244; *see also United States v. Heredia–Fernandez*, 756 F.2d 1412, 1415–16 (9th Cir. 1985)

(affirming the district court's ruling that a *Miranda* waiver was valid where the defendant read a

form containing the *Miranda* advisement, signed a waiver, later indicated that he did not wish to

have them read to him again, and had been arrested approximately fifteen times in the preceding

eight to ten years).

      In *Miranda*, the Supreme Court held that informing a defendant that her statements can be

used as evidence against her serves an important purpose.

> This warning is needed in order to make [the defendant] aware not
> only of the privilege, but also of the consequences of forgoing it.  It
> is only through an awareness of these consequences that there can be
> any assurance of real understanding and intelligent exercise of the
> privilege.  Moreover, this warning may serve to make the individual
> more acutely aware that [s]he is faced with a phase of the adversary
> system—that [s]he is not in the presence of persons acting solely in
> [her] interest.

*Miranda*, 384 U.S. at 469.  Though courts have "never insisted that *Miranda* warnings be given in

the exact form described in that decision . . ." advisements that "touch[] all of the bases required

by *Miranda*" include:  "the right to remain silent, that anything [defendant] said could be used

against him in court, that he had the right to speak to an attorney before and during questioning,

that he had this right to the advice and presence of a lawyer even if [he could] not afford to hire

one, and that he had the right to stop answering at any time until [he] talked to a lawyer."

*Duckworth*, 492 U.S. at 205 (internal quotations omitted); *see also Florida. v. Powell*, 559 U.S.

50, 60 (2010) ("The four warnings *Miranda* requires are invariable, but this Court has not dictated

the words in which the essential information must be conveyed.").

/////

---

[4]  Although no written waiver of *Miranda* rights is required (*see United States v. Calise*, 996 F.2d
1019, 1022 (9th Cir. 1993)), the absence of a signed waiver form certainly does not aid the
government in satisfying its heavy burden of establishing by a preponderance of the evidence that
the waiver of *Miranda* rights was voluntary, knowing, and intelligent.  *Garibay*, 143 F.3d at 536–
37 84).

Consistent with these well-recognized principles, courts have found that *Miranda* warnings which did not include all four advisements are incomplete and therefore, that statements made pursuant to such warnings are subject to suppression. *See United States v. Raileanu*, 609 F. App'x 377, 379 (9th Cir. 2015)[5] (affirming district court's order suppressing statements because the *Miranda* warning "omitted the advice that, if [defendant] could not afford an attorney, one would be appointed to represent him"); *United States v. Botello-Rosales*, 728 F.3d 865, 867 (9th Cir. 2013) (upholding suppression of the defendant's statement where the detective's *Miranda* warning in Spanish was found to have "failed to reasonably convey the government's obligation to appoint an attorney for an indigent suspect who wishes to consult one."); *United States v. Bland*, 908 F.2d 471, 473–474 (9th Cir. 1990) (holding that on retrial, the district court should exclude defendant's confession, which was given subsequent to a *Miranda* warning that "failed to mention that [defendant] was entitled to have an attorney during questioning."); *United States v. Noti*, 731 F.2d 610, 614–616 (9th Cir. 1984) (holding that a *Miranda* warning was defective because the officer failed to tell defendant that he had the right to counsel during, as well as before, questioning); *United States v. Toliver*, 480 F. Supp. 2d 1216, 1241–1242 (D. Nev. 2007), *aff'd*, 380 Fed. App'x 570 (9th Cir. 2010) (a *Miranda* warning that "did not expressly inform Defendant that he had the right to consult with an attorney prior to questioning or to have an attorney present during questioning" were inadequate).

Here, when he broke down each of the warnings included in the *Miranda* advisement individually, Det. Navarro failed to explain to defendant Cervantes Sanchez that her statements could be used as evidence against her. Though Det. Navarro quickly recited the complete *Miranda* warning three times earlier in his interaction with the defendant, those rapid recitations were insufficient to obtain a knowing and intelligent waiver of rights from defendant Cervantes Sanchez, since she never indicated in any way that she understood them. Indeed, she stated to the contrary. Of course, "*Miranda* [also] requires . . . meaningful advice to the unlettered and unlearned in language which [they] can comprehend and on which [they] can knowingly act."

---

[5] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

1  *United States v. Perez-Lopez*, 348 F.3d 839, 848 (9th Cir. 2003) (citing *United States v. San*
2  *Juan–Cruz*, 314 F.3d 384, 387 (9th Cir. 2002)).

3     For these reasons, the court finds that the *Miranda* warning provided to defendant
4  Cervantes Sanchez on December 28, 2018 by Det. Navarro were insufficient, because it omitted
5  an explanation that her statements could be used as evidence against her, after she had clearly
6  indicated that she did not understand the meaning of the *Miranda* warning when all of the
7  advisements were given to her as a group.  Therefore, any statements made by defendant
8  Cervantes Sanchez during her December 28, 2018 interview must be suppressed.

9         2.    *December 29, 2018 interrogation*

10     The government argues that, even if the court finds that Det. Navarro's *Miranda*
11  advisement was incomplete, the statements that defendant Cervantes Sanchez made to HSI Agent
12  Olaya on the following day should not be suppressed.  As indicated above, on December 29,
13  2018, Agent Olaya gave a complete *Miranda* warning, which defendant Cervantes Sanchez
14  indicated she understood prior to making any statements to the agent.  (Doc. No. 303 at 8.)
15  Nonetheless, defendant Cervantes Sanchez argues that she still did not understand her rights at the
16  time of the December 29, 2019 interview because Agent Olaya read her the *Miranda* rights all
17  together, rather than breaking down each advisement.  (Doc. No. 292 at 6–7.)  The court is not
18  persuaded by Cervantes Sanchez's argument in this regard.

19     At the hearing on the pending motions, defense counsel disavowed any contention that the
20  second interview of the defendant by a different law enforcement officer was part of a two-step
21  interrogation strategy.  *See United States v. Williams*, 435 F.3d 1148, 1154 (9th Cir. 2006)
22  (describing the "two-step interrogation strategy, termed 'question-first,' that called for the
23  deliberate with-holding of the *Miranda* warning until the suspect confessed, followed by a
24  *Miranda* warning and a repetition of the confession already given."); *United States v. Barnes,* 713
25  F.3d 1200, 1205–1207 (9th Cir. 2006) (describing two-step interrogation strategy and how to
26  evaluate the mid-stream *Miranda* warning).  Therefore, there is simply no basis upon which to
27  conclude that the incomplete and inadequate *Miranda* warning from Det. Navarro's first
28  interview of defendant tainted a voluntary waiver following the appropriate and complete

*Miranda* warning provided by Agent Olaya prior to the second interview. *See Raileanu*, 609 F. App'x at 379–80 (concluding that first officer provided "inadequate *Miranda* warnings and thus the statements made to him must be excluded," but that "[the second officer's] later *Miranda* warnings were complete and sufficient and warranted the admission of [defendant's] statements to [the second officer]").

Here, defendant Cervantes Sanchez waived her rights after being given the complete *Miranda* warnings by Agent Olaya. At that point, defendant Cervantes Sanchez had heard the *Miranda* warnings several times in her native language and, if she was confused about any one of the four advisements within that warning, she could have indicated as such, as she had the day before and asked for clarification. She did not do so when advised of her *Miranda* rights by Agent Olaya and instead stated without pause[6] that she understood her rights at that time.

To satisfy its burden of showing a valid waiver by a preponderance of the evidence as to the second interview, the government points to Agent Olaya's *Miranda* warning and to defendant's oral waiver of her rights following that advisement. In the absence of any evidence suggesting to the contrary, the court concludes that defendant's waiver on the second day was voluntary and intelligently given. Therefore, defendant Cervantes Sanchez's motion to suppress her statements made to Agent Olaya during the December 29, 2019 will be denied.

**MOTION TO SUPPRESS EVIDENCE SEIZED**

Defendant Cervantes Sanchez has also filed a motion styled as one to quash and traverse search warrants.[7] (Doc. No. 288.) Therein, defendant seeks the suppression of evidence seized pursuant to a search warrant issued by the Stanislaus County Superior Court on December 26th,

/////

---

[6] The court was not provided either an audio or a video recording of this interview but notes that the transcript of the interview submitted reflects when there were pauses in the interview. (*See* Doc. No. 305 at 33.) There is no indication from the transcript that defendant Cervantes Sanchez even paused before answering "yes," when asked if she understood the *Miranda* warning. (*Id.*) Further, Agent Olaya's report of the interview indicates that, when asked if she understood her *Miranda* rights, Cervantes Sanchez "responded in the affirmative and nodded her head up and down in an affirmative action." (*Id.* at 27.)

[7] The court interprets the motion as one seeking the suppression of evidence.

12

2018, as well as evidence seized pursuant to a federal search warrant issued on March 28th, 2019. (*Id.* at 1–2.)

**A.     Analysis**

      1.     <u>Stanislaus County Search Warrant Issued December 26, 2018</u>

On December 26, 2018, a judge of the Stanislaus County Superior Court issued a search warrant authorizing law enforcement officers to search the AT&T Wireless cell phone of co-defendant Conrado Virgen Mendoza, Paulo[8] Virgen Mendoza's brother, for a wide array of records and information including those with respect to two other phone numbers, one of which apparently was connected to defendant Cervantes Sanchez.[9]  (Doc. No. 299 at 1–5.)  The affidavit in support of this Stanislaus County search warrant recounted the investigation up to that time into the shooting death of a Newman Police Officer earlier that morning, including evidence gathered establishing probable cause to believe that Paulo Virgen Mendoza was responsible for it. (*Id.* at 9–11.)

Defendant Cervantes Sanchez argues that the search warrant affidavit failed to establish probable cause to believe that her cell phone would contain evidence of a crime and, therefore, any evidence gathered from her cell phone pursuant to the Stanislaus County search warrant must be suppressed.  (Doc. No. 288 at 8.)  The defense contends that the supporting affidavit stated merely that defendant Cervantes Sanchez lived with Paulo and their son and did not set forth any evidence suggesting that defendant Cervantes Sanchez had committed a crime or reason to believe that evidence of a crime would be found on her cell phone.  (*Id.*)

In opposing this aspect of the motion to suppress evidence, the government does not argue that the supporting affidavit established probable cause for the issuance of the December 26, 2018 warrant authorizing the search of defendant Cervantes Sanchez's cell phone.  Instead, the government asserts that defendant's motion to suppress should be denied as moot because the

---

[8]  This individual is referred to as "Pablo" in the state search warrant and supporting affidavits.

[9]  The courts says "apparently" because although neither the defendant's motion, the government's opposition or the defense reply clarifies this point, the affidavit in support of the search warrant reported that one of the telephone numbers belonged to "Pablo's wife" identified as "Ana."  (Doc. No. 299 at 9.)

government does not intend to rely on any of defendant Cervantes Sanchez's cell phone records, recorded conversations, people called and ping phone location information seized pursuant to the state court warrant in its case-in-chief. (Doc. No. 300 at 3–5.) Somewhat confusingly, the government next contends that one has no reasonable expectation of privacy in toll records or subscriber and call information, and therefore, no search warrant supported by probable cause showing is necessary to obtain such records.[10] (*Id*. at 4.) The government observes that in this case federal investigators obtained such information by way of subpoena pursuant to their routine practice. (*Id*.)

Although not entirely clear, it appears defendant Cervantes Sanchez for the most part does not dispute the government's argument in this regard. However, the defense does contend that any historical cell-site location evidence obtained as a result of the state court issued search warrant should be suppressed in light of the government's implicit concession of an obvious lack of probable cause for the search of defendant Cervantes Sanchez's phone records pursuant to the state court issued warrant.[11] (Doc. No. 309 at 2.) The court agrees.

/////

---

[10]  The government acknowledges that the same is not true as to historical cell-site location information ("CSLI") and internet search history, and that a valid search warrant is required to obtain such information. (*Id*. at 5.) *See Carpenter v. United States*, ___U.S.___, ___, 138 S. Ct. 2206, 2221 (2018) ("Having found that the acquisition of Carpenter's CSLI was a search, we also conclude that the Government must generally obtain a warrant supported by probable cause before acquiring such records."). However, the government also contends that with respect to such records, it is relying solely on the March 28, 2019 federal search warrant, which it asserts is valid and untainted by the earlier issued state warrant. (*Id*.)

[11]  Indeed, on its face the warrant only authorized the search of co-defendant Conrado Virgen Mendoza's cell phone and did not authorize a search for defendant Cervantes' Sanchez cell phone records at all. (*See* Doc. No. 299 at 2, Attachment A, identifying the places to be searched.) Thus, searching for the phone records of defendant Cervantes Sanchez pursuant to this warrant would have been an obvious, facially overbroad execution of the warrant requiring suppression of all evidence seized in excess of that authorized. *See United States v. Sears*, 411 F.3d 1124, 1131 (9th Cir. 2005); *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir. 1985) (absent a flagrant disregard for the warrant, only items seized that "fall outside the scope of the warrant need be suppressed"); *see also United States v. Chen*, 979 F.2d 714, 717 (9th Cir. 1992) ("Ordinarily, only evidence that is obtained in violation of a warrant is suppressed. However, in cases where there is a 'flagrant disregard' for the terms of the warrant, the district court may suppress all of the evidence, including evidence that was not tainted by the violation.")

14

To the extent the government wishes to introduce evidence of defendant Cervantes Sanchez's phone records obtained pursuant to the flawed December 26, 2018 Stanislaus County search warrant, it has the burden of establishing an independent source for that evidence. *See Murray v. United States*, 487 U.S. 533, 537 (1988) ("When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation . . ." and therefore, evidence with an independent source should not be suppressed.); *United States v. Cella*, 568 F.2d 1266, 1284 (9th Cir. 1977) ("Initially, the defendant who shows that he was the victim of an unconstitutional search must go forward with specific evidence demonstrating taint. [citations omitted.] The burden then shifts to the government to show that it acquired its evidence from an independent source."); *see also United States v. Gorman*, 859 F.3d 706, 718 (9th Cir. 2017) (discussing the independent source, inevitable discovery, attenuated basis exceptions to the fruit of the poisonous tree doctrine). Accordingly, defendant Cervantes Sanchez's motion to suppress any historical cell site location evidence relating to her phone seized pursuant to the search warrant issued on December 26, 2018 by the Stanislaus County Superior Court is granted without prejudice to the government demonstrating that one of the exceptions to the fruit of the poisonous tree doctrine permits the admission of such evidence.[12]

## 2. Federal Warrant Issued on March 28, 2019

As part of the investigation in this case, on March 28, 2019, a federal search warrant was issued by a magistrate judge of this court authorizing the search of five cell phones, including one seized from defendant Cervantes Sanchez, for evidence of the crimes of conspiracy to harbor an illegal alien, conspiracy to aid unlawful flight to avoid prosecution and being a convicted felon in

---

[12] The court again notes that the government has asserted that it has an independent source for any historical cell-site information and internet search history obtained by the search of defendant Cervantes Sanchez's phone in the form of the subsequent March 28, 2019 federal warrant authorizing the search of that phone. (Doc. No. 300 at 5.) The government's assertion may be well-taken since the affidavit in support of the issuance of the federal warrant does not appear to refer to any evidence obtained pursuant to the Stanislaus County search warrant. However, because the defendant has effectively contested the government's independent source assertion, it is now the government's evidentiary burden to establish the independent source.

possession of a firearm. (Doc. No. 302-1 at 1, 7, 31–32.) Defendant Cervantes Sanchez has also moved to suppress all evidence seized pursuant to that federal search warrant on the grounds that the affidavit in support of thereof omitted various facts resulting in a materially misleading affidavit. (Doc. No. 288 at 10–14.)

"A defendant is entitled to an evidentiary hearing if he 'makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Craighead*, 539 F.3d 1073, 1080–81 (9th Cir. 2008) (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)); *see also United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011); *United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000); *United States v. Johns*, 851 F.2d 1131, 1133 (9th Cir. 1988). Therefore, in order to be entitled to an evidentiary hearing on such a motion, a defendant must come forward with specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and support that claim with a sufficient offer of proof. *Craighead*, 539 F.3d at 1080 (citing *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983)). Where a substantial preliminary showing is made, "the court must hold a hearing to determine if any false statements deliberately or recklessly included in the affidavit were material to the magistrate's finding of probable cause."[13] *Johns*, 851 F.2d at 1133 (quoting *United States v. Burnes*, 816 F.2d 1354, 1357 (9th Cir. 1987)); *see also United States v. Stanert*, 762 F.2d 775, 780 (9th Cir.), *as amended*, 769 F.2d 1410 (9th Cir. 1985). To prevail on a *Franks* challenge to the veracity of the affidavit and the validity of the warrant, the defendant must ultimately establish by a preponderance of the evidence: (1) that the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant; and (2) that the false or misleading statement or omission was material, that is, it was necessary to the finding of probable cause. *United States v. Perkins*, 850 F.3d 1109, 1116 (9th

---

[13] Affirmative misrepresentations in a search warrant affidavit are material if probable cause is lacking absent consideration of the misrepresented facts. *Crowe v. County of San Diego*, 608 F.3d 406, 435 (citing *Franks*, 438 U.S. at 171–72). A misrepresentation based on an omission is material where the inclusion of the omitted facts would "cast doubt on the existence of probable cause." *Id.* (quoting *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992)).

Cir. 2017) (citing *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005)).  If the defendant satisfies both requirements, "the search warrant must be voided and the fruits of the search excluded." *Perkins*, 850 F.3d at 1116 (quoting *Franks*, 438 U.S. at 156).

As noted above, defendant Cervantes Sanchez moves to suppress evidence seized from her cell phone pursuant to the March 28, 2019 federal search warrant, arguing that the affiant, HSI Agent Olaya, omitted a number of facts material to the probable cause determination.  (Doc. No. 288 at 10–14.)  In this regard, defendant Cervantes Sanchez argues that in recounting her statements to police, the affidavit omitted all of her statements that negated any specific criminal intent on her part to assist Paulo following the shooting.  (*Id.* at 11.)  Specifically, defendant contends that the following of her statements was omitted from the affidavit:  (1) that she was unsure that Paulo had committed any crime when he first contacted her on the night in question; (2) that Paulo was drunk that night; (3) that she routinely provided Paulo with clothing prior to his weekly departure to the Bay Area for work; and (4) that she did not contact the authorities because she feared what Paulo would do to her or her son, particularly while he was attempting to avoid apprehension.  (*Id.* at 11.)

　　　　　　　　　　　　　*a.*　　　*Analysis*

For the reasons explained below, the court concludes that defendant Cervantes Sanchez has failed to make a sufficient showing to be entitled to an evidentiary hearing under *Franks*.  The federal search warrant issued on March 28, 2019 identified five cell phones and stated that they were subject to search because they were evidence of a crime; contraband, fruits of crime, or illegally possessed items; and property designed for use in committing a crime.  (Doc. No. 302-1 at 7–8.)  The affidavit in support of that warrant stated that the owners of those cell phones, including defendant Cervantes Sanchez, had assisted Paulo during his flight to avoid prosecution in connection with the shooting death of the officer.  (*Id.* at 9.)  Specifically, the affidavit stated that defendant Cervantes Sanchez had assisted Paulo in his efforts by providing him several sets of clothing after the shooting, failing to disclose his whereabouts after discovering he was wanted by police, and providing untruthful and conflicting statements to authorities regarding his whereabouts.  (*Id.* at 10.)  The affidavit also advised the reviewing magistrate judge that

17

Cervantes Sanchez told law enforcement officers that she had communicated by phone with others, including Paulo's family, regarding the shooting and the fact that Paulo was wanted by police. (*Id.* at 14.) Defendant contends that the statements listed above which were omitted from the affidavit were critical to a determination of probable cause to believe that she acted with the specific criminal intent to commit an identified crime. (Doc. No. 288 at 11–12.) At the outset, the court observes that the focus of this argument misses the mark in multiple respects.

First, a search warrant is not an indictment. Indeed, "[i]t is well established that a location can be searched for evidence of a crime even if there is no probable cause to arrest the person at the location." *United States v. Adjani*, 452 F.3d 1140, 1146 (9th Cir. 2006) (citing *United States v. Hay*, 231 F.3d 630, 635 (9th Cir. 2000)); *see also United States v. Wells*, No. 3:13-CR-008-RRB-JDR, 2014 WL 12796414, at *2 (D. Alaska Jan. 16, 2014) ("A search warrant is not an accusatory document. There is no need to address in the affidavit whether the agents have enough evidence to arrest the suspect."). Rather, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Adjani*, 452 F.3d at 1146 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978); *see also United States v. Taketa*, 923 F.2d 665, 674 (9th Cir. 1991) (a search warrant may issue based on probable cause that evidence of criminal activity is located in the place to be searched and is not dependent on owner of the property being suspected of a crime).

Second, defendant's argument that a corrected search warrant affidavit would have failed to establish probable cause to believe that she had the required scienter to commit the identified crimes also appears to be misplaced. A *Franks* challenge to a warrant is not properly based on such arguments regarding a failure to establish probable cause with respect to intent or scienter. *See United States v. Nazemzadeh*, No. 11-CR-5726-L, 2013 WL 544054, at *12 (S.D. Cal. Feb. 12, 2013) (declining to create a rule "that no search warrant can issue for crimes with a specific intent element unless probable cause supported such intent"); *see also United States v. Abdallah*, No. CRIM.A. H-07-155, 2007 WL 4334106, at *11 (S.D. Tex. Dec. 7, 2007) ("[Defendants] have not shown that the affidavit was insufficient to support a finding of probable cause because it

failed to allege specific details on the element of intent.").  Indeed, in an unpublished decision issued prior to the adoption of Ninth Circuit Rule 36–3(b), the Ninth Circuit held in the context of a § 1983 action as follows:

> The affidavit presented by Officer Thornburg sufficiently satisfied the probable cause test.  It was not necessary, as Drinkhouse suggests, that the officer's affidavit conclusively establish the scienter standards for drug paraphernalia statutes[.]  Drinkhouse confuses the standard of proof necessary for the issuance of a search warrant with that required to establish guilt.  The affidavit was required merely, but necessarily, to present facts demonstrating a fair probability that Drinkhouse was in possession of materials in violation of California Health and Safety Code sections 11364.7 and 11014.5.  This it did.

*Drinkhouse v. Abernathy*, 872 F.2d 1477, at *1 (9th Cir. 1988) (internal citations omitted).

Here, the search warrant affidavit needed only to establish probable cause that evidence of the cited crimes, or property used to commit those crimes, would be found in a search of defendant's cell phone.  For the reasons explained below, even with the allegedly omitted facts added, the affidavit did so.

Defendant Cervantes Sanchez argues that her entire statement was available to Agent Olaya when he drafted his search warrant affidavit, thus indicating that the omissions were made with a reckless disregard for the truth of the affidavit.  (Doc. No. 288 at 12.)  Assuming, without deciding, this was the case, the court concludes that an affidavit including the information defendant claims was purposefully omitted would still have established probable cause justifying the issuance of the search warrant for defendant Cervantes Sanchez's phone.  *See United States v. Ruiz*, 758 F.3d 1144, 1148 (9th Cir. 2014) ("If the officer omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause.")

"Probable cause exists if there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,' under the totality of the circumstances."  *United States v. Faagai*, 869 F.3d 1145, 1150 (9th Cir. 2017) (quoting *United States v. Rodriguez*, 869 F.2d 479, 484 (9th Cir. 1989)); *see also United States v. Diaz*, 491 F.3d 1074, 1078 (9th Cir. 2007).  The probable cause standard does not require the court to "believe to an absolute certainty, or by clear

and convincing evidence, or even by a preponderance of the available evidence," that evidence of a crime will be found at a particular location.  *United States v. Lopez*, 482 F.3d 1067, 1078 (9th Cir. 2007); *see also United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (*en banc*) (recognizing that probable cause means "fair probability" and not certainty, or even a preponderance of the evidence).

Including the additional statements that defendant Cervantes Sanchez made to police and which she argues should have been included in the affidavit would not have altered the probable cause calculation.  Even if the affidavit had reported that Cervantes Sanchez also told police that she was unsure that Paulo had committed a crime when he first came home, that he was drunk when he told her he had committed a crime and that she routinely provided him with clothing prior to his weekly departure for work, the affidavit still would have informed the reviewing magistrate that she had provided statements, including those about Paulo's whereabouts, to law enforcement that were inconsistent with the statements of other witnesses, and that she had admitted to police that she communicated by phone with several members of Paulo's family regarding the shooting and the fact that he was wanted by police.  (*See* Doc. No. 302-1 at 10; 13–14.)  This information was sufficient to establish a fair probability that evidence of the conspiracy offenses would be found on her phone.  Finally, defendant Cervantes Sanchez's statement to police that she did not contact the authorities about Paulo's whereabouts, despite knowing he was wanted by police because she feared what he would do to her or her son, was immaterial to the probable cause determination.  At most, her statement to police in this regard implicates only an affirmative defense of duress to any charges brought against her and does not negate the existence of a probable cause to search.  *See United States v. Barnes*, 126 F. Supp. 3d 735, 745 (E.D. La. 2015) ("Courts routinely reject *Franks* challenges based on the omission of facts that might have established an affirmative defense.") (citing cases); *United States v. Call*, No. 2:09-CR00079-KJD-RJJ, 2009 WL 6047137, at *7 (D. Nev. Nov. 24, 2009), *report and recommendation adopted*, No. 209-CR-0079-KJD-RJJ, 2010 WL 932599 (D. Nev. Mar. 11, 2010) (information in support of a potential entrapment affirmative defense was not a material omission to the search

/////

warrant affidavit); *see also Dixon v. United States*, 548 U.S. 1, 2 (2006) (defendant bears the burden of proving a duress defense).

Because an affidavit with the additions sought by defendant Cervantes Sanchez would still have established probable cause justifying the issuance of the warrant for the search of her phone, defendant's request for a *Franks* hearing and motion to suppress evidence seized pursuant to the federal search warrant issued on March 28, 2019 will be denied.

## MOTION FOR PRETRIAL AUTHENTICATION

The government has moved for the pretrial authentication by the court of: (1) 25 recordings of post-arrest statements of the defendants and 43 transcripts of those recorded statements; (2) 6 phone extractions and 6 transcripts thereof; (3) 2 Facebook extractions and 2 transcripts of them; and (4) 7 video surveillance recordings obtained from retail establishments. (Doc. No. 287 at 1.) The government also seeks pretrial authentication by the court of English translations of the recorded and extracted material, as well as translations of 5 foreign birth certificates. (*Id.* at 3.) In total, the government seeks pretrial authentication of 56 transcripts/translations. This motion for pretrial authentication is brought by the government pursuant to Federal Rules of Evidence 104(a) and 901(a). (*Id.*) Additionally, the government has provided notice pursuant to Federal Rules of Evidence 902(11) and 902(13) that certain evidence has been certified by 7 records custodians as records of regularly conducted business activity, including business activity of electronic mail providers, and that such evidence is, therefore, admissible under Rule 803(6). The government has moved for the pretrial authentication of these records pursuant to Federal Rules of Evidence 104, 803(6), 902(11) and 902(13). (*Id.* at 1–2.)[14]

On April 30, 2019, defendant Conrado filed a response to the government's motion, arguing that the government's notice failed to identify the specific exhibits it seeks to authenticate prior to trial and was inadequate because it denied the defendants the opportunity to fully assess

---

[14] Federal Rules of Evidence 803(6) and 902(11) "go hand in hand." *United States v. Kahre*, 610 F. Supp. 2d 1261, 1263 (D. Nev. 2009) (citing 5 Federal Evidence § 9:40 (3d ed.)). Declarations filed under Federal Rules of Evidence 902(11) are the functional equivalent to live testimony, do not run afoul of the Confrontation Clause, and may therefore be relied upon in criminal cases. *Id.*; *see also United States v. Siders*, 712 Fed. App'x 601, 602 (9th Cir. 2017).

whether they object to a pretrial finding of authenticity as to specific documents. (Doc. No. 306 at 1–2.) On May 2, 2019, the government replied, representing to the court that it had unsuccessfully proposed various stipulations to all defense counsel relating to the evidence which the government seeks to authenticate prior to trial. (Doc. No. 308 at 2.) The government also provided some more specificity regarding the evidence for which it seeks pretrial authentication. (*Id.* at 3–9.)

At the hearing on May 7, 2019, the court and all counsel discussed the procedure for seeking pretrial authentication of documents and records. Several defense counsel indicated at that time that they had been unable to stipulate to authenticity of certain records based on the original, compressed pre-trial schedule in this case but were now willing to meet and confer with the government following that hearing in light of the continuance of the trial date. The court again directs the parties to meet and confer, if they have not already done so, to attempt to reach stipulations regarding authentication of documents and records prior to trial.[15] A further hearing on the government's motion for pretrial authentication will be held on Monday, July 1, 2019 at 10:00 a.m. in the courtroom of the undersigned.[16] Any further briefing or status reports addressing this subject may be filed by the parties with the court by Wednesday, June 26, 2019 and must be limited to no more than ten pages in length.

## CONCLUSION

For all of the reasons set forth above,

1. Defendant Cervantes Sanchez's motion to suppress her statements made during her interview by local law enforcement on December 28, 2018 (Doc. No. 292) is granted;

/////

---

[15] The court encourages the parties to reach agreement so as to avoid the unnecessary appearance of custodian of records witnesses at trial where there is no legitimate dispute as to the authenticity and admissibility of records.

[16] This will not be an evidentiary hearing. An evidentiary hearing will be set at a future date prior to trial only if the court determines that such a pretrial evidentiary hearing is necessary and appropriate.

2. Defendant Cervantes Sanchez's motion to suppress her statements made during her interview by federal law enforcement on December 29, 2018 (Doc. No. 292) is denied;

3. Defendant Cervantes Sanchez's motion to suppress historical cell-site evidence seized pursuant to the December 26, 2018 Stanislaus County search warrant (Doc. No. 288), if any, is granted without prejudice to the government establishing an independent source for such evidence and denied in all other respects;

4. Defendant Cervantes Sanchez's motion to suppress evidence seized from her cell phone pursuant to the March 28, 2019 federal search warrant (Doc. No. 288) is denied;

5. The government's motion for pretrial authentication of documents and records (Doc. No. 287) is set for further hearing on July 1, 2019 at 10:00 a.m. in the courtroom of the undersigned;

6. The parties are directed to meet and confer in an attempt to reach stipulations regarding the authentication of documents and records prior to the July 1, 2019 hearing and shall submit any further briefing or status reports regarding any outstanding issues in this regard by June 26, 2019.

IT IS SO ORDERED.

Dated: **June 20, 2019**

_____
UNITED STATES DISTRICT JUDGE